**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**EMMANUEL T. JOHNSON,**

                              **Petitioner,**

   **v.**                                                    **9:02-CV-1366**
                                                                **(NPM)**

**THOMAS RICKS, Superintendent**

                              **Respondent.**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::
<u>**APPEARANCES:**</u>                    <u>**OF COUNSEL:**</u>

**FOR THE PETITIONER**:

**EMMANUEL T. JOHNSON**
Petitioner, <u>pro se</u>
98-B-1104
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**          **MARIA MORAN, Esq.**
Office of Attorney General             Asst. Attorney General
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

**NEAL P. MCCURN**
**SENIOR UNITED STATES DISTRICT JUDGE**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.**    <u>**Background**</u>

         **A.**    <u>**State Court Proceedings**</u>

         According to the testimony adduced at trial, in the early evening of May 25, 1997, James

Gaston walked to his cousin's house on Merriman Avenue in the City of Syracuse, New York.

<u>See</u> Transcript of Trial of Emmanuel T. Johnson (5/4/98) ("Trial Tr.") at 286.  Gaston briefly

visited with his cousin, Rose Anne Kerce, and others in the home at the time and then began

walking on Massena Street in Syracuse.  Trial Tr. at 290, 378-79, 438.  Moments after he left the

house, its occupants heard two gunshots.  Trial Tr. at 297, 380, 439.  One of the people inside the

home immediately looked out the window and observed a person with a stocky build, wearing a

dark brown hooded sweatshirt, place something inside his clothing.  Trial Tr. at 440-44.  Kerce

and the others soon left the house and saw Gaston laying on the street in a pool of blood.  Trial

Tr. at 290, 299, 384, 444-45.  Around that same time, a neighbor heard what she believed were

firecrackers, and when she looked out the window, she saw a body laying on the ground near

Kerce's house and a man running from the scene.  Trial Tr. at 343-54.[1]  Officers from the

Syracuse Police Department were soon called to the scene, however when they arrived they

determined that the victim had already expired.  Trial Tr. at 267, 275, 317.  A subsequent

autopsy of Gaston established that he had died from a gunshot wound that had lodged in his

spine.[2]  Trial Tr. at 730-732.

The testimony at trial also established that Johnson owned the gun which the prosecution

established was the murder weapon.  Specifically, a witness at Johnson's trial, Charles Williams,

testified that in the spring of 1997, he had purchased a .38 caliber revolver from a "crack addict"

who lived on the south side of Syracuse.  Trial Tr. at 457.  Williams stated that one morning in

May, 1997, he gave that gun to Johnson.  Trial Tr. at 465-67.  As Johnson took the gun, he

informed Williams that he needed some money and that he intended to rob some drug dealers.

--------

[1]      Other individuals who were in the area at the time also advised the police
that they saw a man running from the scene at that time.  Trial Tr. at 803-05.

[2]      The proof at trial established that the projectile that was retrieved from the
victim's body was a .38 caliber bullet.  Trial Tr. at 764, 779.

Trial Tr. at 468-469.  At that time, Williams agreed to assist Johnson in the robbery, and the two made plans for Johnson to pick Williams up at his house later that same day.  Trial Tr. at 469, 471.  When Johnson attempted to pick up Williams that evening, however, he decided not to accompany Johnson.  Trial Tr. at 471.  Johnson then left Williams' house.  Id.

The following day, Williams learned that a man had been murdered the previous night in the area where Johnson indicated he had planned on committing the robbery.  Trial Tr. at 472-73.  When Williams asked Johnson later that day whether he was involved in the homicide, he admitted that on the night Gaston was killed, Johnson had approached a black man from behind, placed a .38 revolver to his head, and directed the victim to surrender his money.  Trial Tr. at 477-78.  Williams further testified that Johnson admitted that he fired his gun but missed the man, but that when the man attempted to wrest the gun from Johnson, he fired the gun a second time, shooting him.[3]  Trial Tr. at 478.  Johnson also admitted that he wiped the gun clean of his fingerprints and removed the remaining bullets from the gun's chamber.  Trial Tr. at 479-80.

The records also reflect that at approximately 2:00 a.m. on May 31, 1997, officers from the Syracuse Police Department responded to a call of a "suspicious person" on South McBride Street in Syracuse.  Trial Tr. at 504-07, 557-60, 595-96.  Upon arriving at that location, law enforcement agents observed a black male near the side of the house who began running when the officers looked in his direction.  Trial Tr. at 508-09, 561.  Officers James LoCastro and John Hamblin then began pursuing the man.  Trial Tr. at 509-10.  As Officer LoCastro drew near the

---

[3]     Williams initially testified that Johnson did not admit to Williams that he had committed the homicide.  Trial Tr. at 474-76.  However, the prosecution then refreshed Johnson's memory with his grand jury testimony, after which Williams testified that Johnson uttered the incriminating statements regarding the homicide to Williams.  Trial Tr. at 477-80.

suspect, the officer observed the individual reach into his waist and remove a black revolver. Trial Tr. at 510, 513.  The chase continued until the man jumped over a fence and Officer LoCastro lost sight of him.  Trial Tr. at 511.  Other officers, however, had been advised of the chase and as a result the man, who was subsequently identified at trial as petitioner, pro se Emmanuel T. Johnson, was eventually apprehended on South McBride Street.  Trial Tr. at 512, 569, 600.  At the time he was caught, Johnson, who was wearing a brown hooded sweatshirt, was no longer in possession of a revolver.  Trial Tr. at 510, 570.  The police, however, soon located a .38 caliber revolver in the area near where Johnson had been apprehended.  Trial Tr. at 514-15.  Subsequent ballistics testing of that revolver established that the bullet that killed the victim had been fired from that weapon.  Trial Tr. at 667-668, 672, 783.

As a result of the foregoing, an Onondaga County Grand Jury returned a multi-count indictment against Johnson.  See Indictment No. 97-0984-1 ("Indictment").  In that accusatory instrument, Johnson was charged with two counts of murder in the second degree, contrary to New York Penal Law ("Penal Law") §§ 125.25(1) and 125.25(3), respectively; attempted robbery in the first degree, in violation of Penal Law §§ 110.00 and 160.15(2); second degree criminal possession of a weapon, in violation of Penal Law § 265.03; and criminal possession of a weapon in the third degree, contrary to Penal Law § 265.02(4).  See Indictment.[4]

Johnson's jury trial on those charges commenced in Onondaga County Court on May 4, 1998 with County Court Judge William J. Burke presiding.  At the conclusion of that trial, the jury convicted Johnson of all charges.  Trial Tr. at 919-20.

---

[4]      The first four counts in the Indictment stemmed from the May 25, 1997 incident, while the fifth count charged that Johnson criminally possessed the revolver on May 31, 1997.  See Indictment.

Johnson appeared before Judge Burke for sentencing on June 3, 1998.  At that time, he was sentenced by the County Court to concurrent terms of imprisonment of twenty five years to life on each of the two murder convictions, and lesser, concurrent sentences on the attempted robbery and second degree weapons possession convictions.  See Transcript of Sentencing of Emmanuel T. Johnson (6/3/98) at 7-8.  Judge Burke also sentenced Johnson to a term of three and one-half to seven years imprisonment on the third degree criminal possession of a weapon conviction, with that sentence to run consecutive to the other sentences imposed on Johnson. Sentencing Tr. at 7-8.

Petitioner appealed the judgment of conviction to the New York State Supreme Court Appellate Division, Fourth Department.  In counsel's appellate brief filed on Johnson's behalf, counsel argued that:  i) Judge Burke improperly discharged a sworn juror during the course of Johnson's trial; ii) the County Court erred in sentencing Johnson to a consecutive sentence on the third degree criminal possession of a weapon conviction; and iii) Judge Burke committed error when he failed to inspect the Grand Jury minutes.  See Appellate Brief on Appeal (3/18/99) ("App. Br.").  That appeal was opposed by the Onondaga County district attorney, and in its Memorandum and Order dated October 1, 1999, the Appellate Division affirmed Johnson's convictions and sentences.  People v. Johnson, 265 A.D.2d 858, (4th Dept. 1999).  Johnson's application for leave to appeal that decision was denied by the New York Court of Appeals on January 10, 2000.  People v. Johnson, 94 N.Y.2d 881 (2000).

On March 17, 1999, Johnson filed his initial motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL"), § 440.10 ("March, 1999 CPL Motion").   In that application, Johnson argued that:  i) the doctrine of collateral estoppel barred relitigation of the charges brought against Johnson in Count Five of the Indictment; and 2) the wrongful inclusion

5

of that charge in the Indictment fatally impaired the integrity of the criminal proceedings below. See Dkt. No. 31, Exh. 7.  That motion was opposed by the Onondaga County District Attorney, Dkt. No. 31, Exh. 8, and in his Decision and Order dated April 7, 1999, Judge Burke denied that application.  See Dkt. No. 31, Exh. 9 ("April, 1999 Order").

On February 27, 2000, petitioner filed a second motion to vacate his conviction pursuant to CPL § 440.10.  Dkt. No. 31, Exh. 10 ("February, 2000 CPL Motion").  In that application, Johnson alleged that he was denied the effective assistance of trial counsel because counsel failed to:  i) object to the County Court's decisions which discharged one juror and permitted another sworn juror to remain on the panel; ii) object to the prosecutor's summation; and iii) request a charge which instructed the jury that Williams was an accomplice as a matter of law. See Dkt. No. 31, Exh. 10.  That application was opposed by the District Attorney, see Dkt. No. 31, Exh. 11, and presiding Onondaga County Court Judge Anthony Aloi thereafter denied Johnson's motion in his Decision and Order dated July 17, 2000.  See Dkt. No. 31, Exh.12 ("July, 2000 Order").

On March 9, 2000, Johnson filed a petition for writ of error coram nobis with the Fourth Department in which he claimed, inter alia, that he was denied the effective assistance of appellate counsel.  See Dkt. No. 31, Exh.16 ("Coram Nobis Application").  Specifically, he claimed that his appellate attorney:  i) discouraged Johnson from filing a pro se appellate brief; ii) failed to argue that trial counsel was ineffective; and iii) failed to claim that the prosecution improperly bolstered one of its witnesses in its summation.  See Coram Nobis Application.  The Appellate Division denied Johnson's writ on June 16, 2000.  People v. Johnson, 273 A.D.2d 950 (4th Dept. 2000).

On or about June 13, 2001, Johnson filed a third CPL motion to vacate his conviction

6

in Onondaga County Court.  See Dkt. No. 31, Exh.17 ("June, 2001 CPL Motion").  In that

challenge to his conviction, Johnson argued that the prosecutor wrongfully tried Johnson because

the fifth count in the Indictment was improperly included in that accusatory instrument.  That

application was opposed by the District Attorney, and in his Decision and Order dated

September 27, 2001, Judge Aloi denied that collateral challenge.  See Dkt. No. 31, Exh. 20

("September, 2001 Order").

### B.   This Action

Johnson filed a writ of habeas corpus in this District on October 28, 2002.  Dkt. No. 1.

United States District Judge Thomas J. McAvoy thereafter directed Johnson to file an amended

petition if he wished to proceed with this action, Dkt. No. 3, and on November 21, 2002,

Johnson filed that pleading.  Dkt. No. 5.  In his Decision and Order filed December 5, 2002,

Judge McAvoy dismissed this action because the documents before the Court suggested that

Johnson's action was time-barred in light of the one year statute of limitations imposed on

federal habeas petitions under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA").

See Dkt. No. 7.  Johnson appealed that order to the Second Circuit, Dkt. No. 13, however he

subsequently withdrew that appeal, Dkt. No. 15, and filed another amended petition in this

action.  See Dkt. No. 17 ("Am. Pet.").  In that amended pleading, Johnson asserts several

grounds in support of his request for federal habeas intervention.  Specifically, he argues that:  i)

he received the ineffective assistance of trial counsel; ii) a juror committed misconduct during

the course of Johnson's criminal trial; iii) the trial court abused its discretion in declining to

provide the jury with a requested instruction; iv) the prosecutor committed misconduct in the

related criminal matter; v) the doctrine of collateral estoppel barred his prosecution on the fifth

count in the Indictment; vi) he received the ineffective assistance of appellate counsel; and vii)

the sentence imposed on him by the County Court is illegal.  See Am. Pet., Grounds One through

Seven.

Judge McAvoy reviewed Johnson's amended petition, vacated his prior order dismissing

this action as time-barred, and thereafter directed the Office of the Attorney General for the State

of New York to file a response to Johnson's amended petition.  Dkt. No. 18.[5]  On October 20,

2003, the Office of the Attorney General for the State of New York, acting on respondent's

behalf, filed an answer in opposition to Johnson's amended habeas application.  Dkt. No. 31.

Respondent also filed a memorandum of law in which he requests dismissal of the petition.  Dkt.

No. 32 ("Resp. Mem.").  In opposing Johnson's amended petition, the respondent argues that

Johnson is procedurally barred from asserting several of the claims raised therein, and that none

of his claims have merit.  See Resp. Mem.  Petitioner thereafter filed a traverse in further support

of his amended petition, Dkt. No. 35 ("Traverse"), and on January 5, 2006, this matter was re-

assigned to the undersigned for disposition pursuant to the order of then-Chief Judge Frederick J.

Scullin, Jr.  See Dkt. No. 39.

## II.    Discussion

### A.    Ineffective Assistance of Appellate Counsel[6]

#### i.    Applicable Standard of Review

---

[5]    Before the respondent filed his response to the amended petition, Johnson
filed a memorandum of law in support of his amended habeas application.  See Dkt. No. 27
("Supporting Mem.").

[6]    The resolution of Johnson's claim challenging the effectiveness of his
appellate counsel (see Am. Pet., Ground Six) necessarily impacts this Court's consideration
of other issues raised herein, including whether Johnson is procedurally barred from
asserting some of his claims in his amended petition.  The Court therefore first addresses the
substance of petitioner's claim challenging the effectiveness of his appellate counsel.

The enactment of the AEDPA brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted in Rodriguez v. Miller, 439 F.3d 68 (2d Cir. 2006) that:

> a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Rodriguez, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d));[7] see also DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005); Miranda v. Bennett, 322 F.3d 171, 177-78 (2d Cir. 2003); Boyette v. LeFevre, 246 F.3d 76, 88 (2d Cir. 2001).  In providing guidance concerning application of this test, the Second Circuit has recently noted that:

> [A] state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did.  [Williams v. Taylor, 529 U.S. 362,] at 405-06 [2000]; Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001).... [A] state court's decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it.  Williams, 529 U.S. at 413.

Thibodeau v. Portuondo, 486 F.3d 61, 65 (2d Cir. 2007); see also Williams v. Artuz, 237 F.3d

---

[7]      It should be noted that "clearly established federal law" in this context "refers only to the holdings of the Supreme Court."  Rodriguez v. Miller, 499 F.3d 136, 140 (2d Cir. 2007) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).

147, 152 (2d Cir. 2001) (citing <u>Francis S. v. Stone</u>, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." <u>Williams</u>, 529 U.S. at 409; <u>see also</u> <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 315 (2d Cir. 2001). Objectively unreasonable in this context has been interpreted as meaning that "'some increment of incorrectness beyond error is required'" for the habeas court to properly grant the habeas application. <u>Earley v. Murray</u>, 451 F.3d 71, 74 (2d Cir. 2006) (quoting <u>Francis S.</u>, 221 F.3d at 111).

### ii.    Clearly Established Supreme Court Precedent

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const., Amend. VI. To establish a violation of this guarantee of the effective assistance of counsel, a habeas petitioner must show both: i) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and ii) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 688-90 (1984); <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in <u>Strickland</u>).

Moreover, it is well-settled that the Sixth Amendment's right to the effective assistance of counsel requires that indigents be provided with effective counsel for their first appeal as of right. <u>Douglas v. California</u>, 372 U.S. 353, 358 (1963). Consequently, an individual is entitled to the effective assistance of appellate counsel. <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14.

10

(1970).  The proper standard for evaluating a claim that appellate counsel was ineffective is the test enunciated in Strickland.  See Smith v. Robbins, 528 U.S. 259, 287-89 (2000); Penson v. Ohio, 488 U.S. 75, 86-88 (1988).

### iii.    Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent

In his amended petition,  Johnson claims that appellate counsel's performance was deficient because he:  1) only presented three arguments in support of Johnson's appeal, all of which were "weak;" 2) did not assert an ineffective assistance of trial counsel claim; and 3) discouraged Johnson from filing a pro se appellate brief.  See Am. Pet., Ground Six.  This Court will review these theories seriatim.

### 1.    Adequacy of Appellate Brief

In considering petitioner's claim that his appellate counsel asserted "weak" arguments on appeal, this Court has reviewed the brief filed by such counsel on Johnson's behalf.[8]  That review has made it apparent to this Court that appellate counsel's strategy was reasonable and sound, and that the claims asserted in his brief were cogently argued.  In this regard, the Court notes that although Johnson now argues that counsel's appellate arguments were "significantly weak in merit," see Supporting Mem. at 22, two of the grounds asserted by Johnson in his pro se petition are **identical** to points that were argued by appellate counsel in support of Johnson's appeal.  Compare Am. Pet., Grounds One, Seven with App. Br., Points One, Two.  The fact that Johnson has asserted two of the very same claims raised by counsel on appeal in Johnson's amended petition casts significant doubt on his claim that counsel wrongfully asserted those

---

[8]    The appellate brief asserts three points in support of the appeal and was accompanied by a joint appendix on appeal consisting of nearly two hundred (200) pages.

claims on appeal.

Since nothing before the Court suggests that the appellate brief filed by counsel was deficient, petitioner's ineffectiveness claim challenging the quality of counsel's appellate arguments must fail.  E.g. Gonzalez v. Duncan, No. 00-CV-2857, 2001 WL 726985, at *6 (E.D.N.Y. June 22, 2001) (denying habeas claim alleging ineffective assistance of appellate counsel where appellate brief reveals sound appellate strategy on part of attorney); Davis v. Keane, No. 99 CV 71, 2001 WL 13288, at *6 (E.D.N.Y. Jan. 4, 2001) (same), aff'd, No. 01-2110, 2002 WL 2009559 (2d Cir. Sept. 3, 2002).

## 2.      Failure to Argue Ineffective Assistance

In support of Johnson's argument that his appellate counsel wrongfully failed to assert an ineffective assistance of trial counsel claim, petitioner asserts four distinct theories which he argues substantiates this claim.  See, e.g., Am. Pet., Grounds One, Six.  The Court considers each of these theories in turn.

## i.      Discharge of Juror

Johnson initially faults his appellate counsel for failing to argue that Johnson's trial counsel did not properly contest the County Court's decision to discharge a juror who had been empaneled for Johnson's trial.  Supporting Mem. at 22.

As noted above, Charles Williams, a prosecution witness, testified that Johnson admitted to Williams that petitioner had shot someone during a robbery on the date alleged in the Indictment.  Williams also provided testimony that linked Johnson to the weapon used during that crime.  The record reflects that the day after Williams' testimony, one of the petit jurors approached the trial court and, in the presence of the prosecutor and defense counsel, that juror informed Judge Burke that the previous evening, the juror was at an arcade when Williams

approached the juror and advised him that Williams had not wanted to testify.  Trial Tr. at 544.

Williams then asked the juror whether he believed Johnson was guilty of the charges.  Id.  The

juror informed Williams that he did not know whether Johnson was guilty because the trial was

still in progress, and then walked away from that encounter.  Trial Tr. at 545.  The juror stated

that approximately one hour after that incident, Williams again approached the juror and

reiterated his question as to whether the juror believed Johnson was guilty of the charges.  Trial

Tr. at 545.

　　　　After the County Court expressed its belief that the juror could not remain on the panel,

defense counsel opined that a mistrial should be declared in light of Williams' interaction with

the juror.  Trial Tr. at 545-46.  The court denied that application, but noted that, "[b]ased upon

what [the juror] told me, with the contact that was made to him by Williams, ... [m]y discretion

says to me in fairness to both parties that he shouldn't be permitted to be seated here now."  Trial

Tr. at 549-50.

　　　　Petitioner now argues that trial counsel should have requested that the County Court

provide a more detailed explanation on the record for its decision to remove the juror, in

compliance with CPL § 270.35,[9] and that counsel's failure to make such a demand was error.

------

[9]　　　CPL § 270.35, entitled "trial jury; discharge of juror; replacement by
alternate juror," provides, in part:

> If at any time after the trial jury has been sworn and before the rendition of
> its verdict ... the court finds, from facts unknown at the time of the selection
> of the jury, that a juror is grossly unqualified to serve in the case or has
> engaged in misconduct of a substantial nature, but not warranting the
> declaration of a mistrial, the court must discharge such juror....  The court
> shall afford the parties an opportunity to be heard before discharging a juror.
> If the court discharges a juror pursuant to this subdivision, it shall place on
> the record the facts and reasons for its determination....

See CPL § 270.35 (1), (2).

However, this argument overlooks the fact that it was readily apparent to defense counsel, the prosecutor and the court that the juror's interaction with Williams the previous evening necessitated the juror's removal from the panel.  As noted above, defense counsel argued that the fact that Williams had approached the juror warranted the declaration of a mistrial.  Trial Tr. at 545-46.  Furthermore, trial counsel subsequently noted on the record that because of that juror's interaction with Williams, whom counsel characterized as a "very important witness" for the prosecution, such juror "ha[d] to be removed" from the panel.  Trial Tr. at 633-34.  Additionally, Judge Burke specifically expressed his belief that neither side would receive a fair trial if the juror remained on the panel.  Trial Tr. at 549-50.[10]

Since the record establishes that defense counsel agreed with the trial court's determination that the juror was not qualified to continue serving, and that ruling was entirely reasonable in light of the juror's interaction with Williams, trial counsel's failure to request that the County Court provide a more detailed explanation of its decision to remove the juror from the panel was neither objectively unreasonable nor prejudicial to Johnson.  Appellate counsel, therefore, cannot be found to have rendered ineffective assistance by failing to raise this claim on appeal.

### ii.    Prosecutorial Misconduct

Johnson next argues that his trial counsel rendered ineffective assistance because he failed to "adequately object to prosecutor's deliberate violation of statutory mandates."  Am.

---

[10]      A trial court's decision on the issue of whether a juror may properly remain in a jury is "afforded great weight because of its unique position to observe the juror." People v. Pinckney, 220 A.D.2d 539, 539-40 (2d Dept. 1995); see also People v. Williams, 242 A.D.2d 917, 917-18 (4th Dept. 1997) (citing People v Rodriguez, 71 N.Y.2d 214, 219 (1988)).

14

Pet., Grounds Four, Six.  Johnson expands on this claim in his traverse, arguing that the prosecutor "manipulated" various sections of the CPL in presenting his case to the grand jury. See Traverse at 8.  Furthermore, in his error coram nobis application, Johnson argues that appellate counsel failed to argue that trial counsel wrongfully failed to object to prosecutorial misconduct which occurred during summation.  See Coram Nobis Application.

As to Johnson's claims that his trial counsel improperly failed to move to dismiss the Indictment because of the prosecutor's alleged misconduct before the grand jury, the Court notes that this claim appears to overlook the fact that dismissal of an indictment for impairment of the integrity of a Grand Jury proceeding "is an extraordinary remedy which requires meeting a very high and precise standard." People v. Gallicchio, 189 Misc.2d 182, 184 (N.Y.Co.Ct. Sept. 6, 2001) (citing People v. Rosado, 212 A.D.2d 426 (1st Dept. 1995) and People v. Darby, 75 N.Y.2d 449 (1990)).  Petitioner's unsupported claims of misconduct purportedly committed by the prosecution before the grand jury fall far short of that relatively high threshold.  Thus, trial counsel's failure to lodge an objection to that claimed conduct of the prosecutor was neither objectively unreasonable on the part of trial counsel, nor prejudicial to Johnson.  Thus, appellate counsel properly refrained from asserting this issue on appeal.

Petitioner also faults the prosecutor for purportedly bolstering prosecution witness Williams' testimony and making "irrelevant and inflammatory statements" concerning Johnson's marriage to Williams' niece.  See Am. Pet., Grounds Four, Six; see also Coram Nobis Application at ¶ 4.  However, this claim appears to ignore the fact that during defense counsel's summation, Johnson's attorney suggested that the jury might wish to question whether any of Williams' testimony was credible.  See Trial Tr. at 833 (counsel arguing that if Williams was "not telling the truth, about the description of the gun ... what inference does that raise for you

15

about his credibility as to all his testimony").  Since Williams testified at trial that Johnson was

married to Williams' niece, Trial Tr. at 502, the prosecution's comment that such relationship

made Williams' testimony more compelling, see Trial Tr. at 866, was fair comment in light of

both the evidence adduced at trial as well as defense counsel's summation.  Cf. United States v.

Smith, 778 F.2d 925, 929 (2d Cir. 1985) ("final arguments of counsel may be vigorous and

robust if based on the evidence in the record"); Trupin v. United States, No. 99-CIV.-105, 2000

WL 145102, at *7 (S.D.N.Y. Feb. 3, 2000) (citing Smith); Reisino v. Harris, No. 85-CV-1135,

1988 WL 88445, at *2 (N.D.N.Y. Aug. 19, 1988) (McAvoy, J.) (citing Smith); Paul v. Kelly,

No. CV 90-1654, 1991 WL 49774, at *6 (E.D.N.Y. Mar. 26, 1991) (citation omitted).

The remaining claim alleging ineffective assistance related to the prosecution's

summation is based upon the fact that the prosecutor declared in his closing argument that

Officer LoCastro had testified that he had observed Johnson in possession of a black handgun on

the day of his arrest.  See Am. Pet., Ground Six; Coram Nobis Application at ¶ 4;[11] see also Trial

Tr. at 859-60.  Petitioner asserts that this aspect of the summation wrongfully placed Johnson "in

the position of having to call ... Officer LoCastro a liar."  Supporting Mem. at 9.

In his direct testimony, Officer LoCastro declared that on May 31, 1997, he saw Johnson

" pull out a gun."  Trial Tr. at 509.  When asked by the prosecutor to describe that weapon,

Officer LoCastro testified that the gun was "a black finish revolver."  Trial Tr. at 513.  Since the

trial transcript conclusively establishes that Officer LoCastro testified that he observed Johnson

carrying a black handgun on the day of petitioner's arrest, any claim that trial or appellate

---

[11]     In his Coram Nobis Application, Johnson also argues that his appellate
counsel wrongfully failed to raise, as an independent appellate claim, prosecutorial
misconduct during the course of the prosecution's summation.  See Coram Nobis
Application.

16

counsel improperly failed to argue that the prosecutor wrongfully commented on that testimony in his closing argument is specious.

### iii.     Failure to Object to Misconduct of Juror

Petitioner next asserts that appellate counsel improperly failed to argue that trial counsel's performance was deficient because he failed to seek the removal of a juror who allegedly committed misconduct during the course of Johnson's trial.  See Am. Pet., Grounds One; Six.

This aspect of Johnson's amended petition relates to a juror who approached the County Court during the trial and advised Judge Burke that the juror's brother lived "a few blocks from the scene of the crime."  Trial Tr. at 615.  The juror was asked by his brother if he had been selected for Johnson's trial, after which the brother then expressed his belief that he might experience difficulty selling his house because of "a news story about ... a neighborhood that's got some troubles in it."  Trial Tr. at 617-18.  When the juror informed the County Court that he was "concerned" about the fact that his brother was living in close proximity to where the crime occurred, the following colloquy ensued:

> THE COURT: Let me, I ... am going to go back to ask you this question, ... you have been selected to be one of those fair impartial jurors?
>
> THE JUROR: A-hum.
>
> THE COURT: A person is who is going to keep their mind open until they hear all the questions and all the answers and they are going to render a verdict based upon what they find the truth to be, and what they find the instructions from the judge.
>
> THE JUROR: That will not change.
>
> THE COURT: That's the question I want to ask you.

17

THE JUROR: That will not change.

THE COURT: But I want you to look at [the district attorney] ... and [defense counsel] here; and make sure that they understand that they should be comfortable with you, even though you have these concerns.

THE JUROR: The word that comes to my mind is integrity.  I operate with integrity.  I don't know what else to say.

THE COURT: I am satisfied with your answer.

THE JUROR: If I weren't operating with integrity I wouldn't be here now, having this discussion with you.

THE COURT: Exactly.

THE JUROR: I wouldn't.  I wouldn't, I think that by itself should tell you the whole story.

Trial Tr. at 622-23.

After the district attorney posed several questions to the juror, during which he assured

the prosecutor that his verdict would be based on the evidence adduced at trial,[12] defense counsel

engaged in the following brief exchange with the juror:

DEFENSE COUNSEL: This issue about your brother, and his residence near the crime scene on May 25th, this is something that is [on] your mind?

JUROR: Certainly.

DEFENSE COUNSEL: That's all.

---

[12]     In explaining how he would arrive at a decision relative to Johnson's guilt or innocence, the juror stated: "I am going to look at the evidence and the evidence is going to take me in a certain direction and I am going make a decision based on the evidence.  I am going to be rational and objective."  Trial Tr. at 626.

18

JUROR:  Would it impair my judgment?  No.  How could it impair my judgment in any way?  But it's a concern that I want out in the open, aired.  So we all know where we are, and we are all on the same page.

Trial Tr. at 627-28.

When asked by Judge Burke if defense counsel was ready to proceed to trial with that juror remaining on the panel, counsel requested that a mistrial be declared, which the County Court denied.  Trial Tr. at 634.

The foregoing establishes that defense counsel argued that the juror's continued presence on the jury warranted the granting of a mistrial, but that Judge Burke nevertheless believed that the juror could properly remain on the jury.  Since trial counsel objected to the juror's continued presence on the panel, appellate counsel did not act in an objectively unreasonable manner by failing to argue that trial counsel wrongfully failed to seek the removal of that juror from the jury.  Moreover, it is clear that Johnson was in no way prejudiced by a formal application of trial counsel to have the juror removed; Judge Burke clearly believed that the juror could properly remain on the jury, he specifically noted on the record his belief that the juror had not committed gross misconduct, and had "indicated that he [could] do his job pursuant to the law."  Trial Tr. at 630-31.

Petitioner also faults trial counsel for failing to argue that during voir dire, the juror "deliberately conceal[ed] important information," from the defense, i.e., the fact that the juror's brother lived near the crime scene.  See Supporting Mem. at 3.  Appellate counsel is alleged by petitioner to have rendered ineffective assistance because he failed to argue this issue on appeal. Am. Pet., Ground Six.  However, the juror specifically advised the County Court that he was unaware of where the crime had purportedly occurred during voir dire, and that therefore the

19

juror never believed that his brother's address was germane.  Trial Tr. at 619.  Since the record establishes that there was no basis for counsel to argue that the juror had attempted to conceal relevant information from the parties or the court during the course of <u>voir</u> <u>dire</u>, petitioner's ineffectiveness claim relating to this issue is without substance.

### iv.    **Accomplice as a Matter of Law**

The final theory by which Johnson claims that his appellate counsel rendered ineffective assistance regarding trial counsel's conduct concerns the fact that the County Court did not charge the jury that Williams was an accomplice of Johnson as a matter of law with respect to the charged crimes.  <u>See</u> Am. Pet., Grounds One, Six.

However, this argument appears to overlook the fact that defense counsel's trial strategy was to persuade the jury that Johnson did not commit the crimes with which he was charged.  In this regard, the Court notes that in his summation, trial counsel argued that:  a) Johnson was not in possession of the murder weapon when he was arrested (Trial Tr. at 845); b) no forensic testing was performed by law enforcement agents to determine if either the victim's blood or gun powder residue was transferred to Johnson or his clothing (Trial Tr. at 848-49); and c) Johnson was not the individual who committed the murder (Trial Tr. at 835-36).  Thus, a request for an accomplice charge may well have been inconsistent with trial counsel's strategy of persuading the jury that Johnson was not involved in any of the crimes charged.

Moreover, the record establishes that the County Court and defense counsel specifically discussed the issue of whether the defense wished to have the jury provided with an accomplice charge, and Judge Burke declared that he would provide such an instruction if requested by the defense.  Trial Tr. at 796-98.  Since Johnson's counsel never requested that charge, it is clear that counsel's failure to request that charge was a strategic choice of counsel.  <u>E.g.</u> <u>Nenni v. Costello</u>,

No. 02-CV-6116, 2004 WL 1858138, at *10 (W.D.N.Y. Aug 13, 2004) ("[t]he decision by defense counsel not to request a jury instruction ... where such a defense was inconsistent with the stronger defense of misidentification, was a reasonable strategic decision"); see also People v. Smith, 41 A.D.3d 964 (3d Dept.), leave denied, People v. Smith, 9 N.Y.3d 881 (2007) (where the record establishes that the failure to request a jury charge is part of a legitimate trial strategy, an ineffective assistance claim must fail). Therefore, appellate counsel properly refrained from claiming on appeal that trial counsel's failure to request an accomplice charge amounted to ineffective assistance.

### 3.      Failure to File a Pro Se Appellate Brief

The final theory asserted by petitioner relating to appellate counsel alleges that such counsel improperly discouraged Johnson from filing a pro se appellate brief.  See Am. Pet., Ground Six; Supporting Mem. at 22.  However, Johnson notes that the claims he would have pursued in such brief relate to the above-described theories which petitioner argues supports his claim that trial counsel rendered ineffective assistance.  See Supporting Mem. at 22.   Since, as discussed above, those claims are without substance, even assuming, arguendo, that it was objectively unreasonable for appellate counsel to dissuade Johnson from filing a pro se appellate brief, petitioner cannot establish that he was prejudiced, in any way, by counsel's advice.

Since all of Johnson's claims regarding appellate counsel are without merit, he cannot demonstrate that the Fourth Department's decision denying his Coram Nobis Application, see Johnson, 273 A.D.2d at 950, is either contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent.  Therefore, the Court denies Johnson's sixth ground for relief.

### B.      Procedurally Forfeited Claims

21

As noted above, respondent argues that Johnson is procedurally barred from obtaining the relief he seeks with respect to several of the grounds he has raised in his amended petition. See Resp. Mem. at 8-10. This Court therefore briefly reviews the legal precepts relating to procedural default in the context of federal habeas petitions.

### i.        Doctrine of Procedural Default

The Supreme Court has explained that the doctrine of procedural default is based upon considerations of comity in the habeas context, including "the salutary effect of making the state trial on the merits the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing." Wainwright v. Sykes, 433 U.S. 72, 90 (1977). Under the procedural default doctrine, federal district courts are, with limited exceptions, precluded from reviewing a habeas claim if the state court's rejection of that same claim rested on a state procedural bar. See Harris v. Reed, 489 U.S. 255, 262 (1989); Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000); Marengo v. Conway, 342 F.Supp.2d 222, 228 (S.D.N.Y. 2004) (citations omitted).

### ii.       Review of Petitioner's Claims

### 1.        Grounds One through Three

Johnson's first ground alleges that he received the ineffective assistance of trial counsel. See Am. Pet., Ground One. His second claim concerns the juror whom the County Court determined could still serve on petitioner's jury, and argues that such juror "deliberately concealed important information and gave purposeful incorrect responses during voir dire." See Am. Pet., Ground Two. In his third ground for relief, Johnson contends that Judge Burke abused his discretion when he failed to instruct the jury that Williams was an accomplice as a matter of law, and that therefore Johnson could not be convicted on the basis of his testimony absent

corroborative evidence.  See Am. Pet., Ground Three.

Johnson first asserted these claims in the CPL Motion he filed with the County Court in

February, 2000.  See February, 2000 CPL Motion.

In denying that application, Judge Aloi opined:

> [T]he Court is of the opinion that the instant motion must be
> denied pursuant to Criminal Procedure Law Section 440.10(2)(c)
> upon the basis that sufficient facts regarding the aforesaid
> issues were available from the record to have permitted adequate review
> thereof upon the Defendant's appeal.  However, the Defendant
> failed to raise any issues regarding these grounds upon appeal.

See July, 2000 Order at 2.

The denial of a claim under CPL § 440.10(2)(c) is an adequate and independent state

procedural ground barring federal habeas review.  Murden v. Artuz, 497 F.3d 178, 196 (2d Cir.

2007) (citing Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003)); see also Kent v. Smith,  No.

05-CV-785, 2007 WL 2907350, at *8 (N.D.N.Y. Oct. 4, 2007) (Kahn, S.J., adopting Report-

Recommendation of Magistrate Judge David R. Homer); Jordan v. Walker, No. 01-CV-0507,

2007 WL 2344861, at *5 (W.D.N.Y. Aug. 14, 2007).  Thus, these three grounds have been

procedurally forfeited.[13]

### 2.    Ground Four

---

[13]    The fact that Judge Aloi alternatively addressed the merits of these claims
(see July, 2000 Order at 2-4) does not alter this Court's finding that petitioner's claims are
procedurally barred.  As the Second Circuit noted in Fama v. Commissioner of Correctional
Services, 235 F.3d 804 (2d Cir. 2000), where the state court finds that a claim is "not
preserved for appellate review" and then alternatively rules, "in any event," on the merits of
a claim, such claim is procedurally barred for purposes of federal habeas review.  Id. at 810
n.4 (citation omitted); see also Wilson v. Superintendent, Attica Corr. Facility, No. 00-CV-
0767, 2003 WL 22765351, at *4 n.7 (N.D.N.Y. Nov. 24, 2003) (Sharpe, J.) (citations
omitted), appeal dismissed sub nom., Wilson v. People of the State of New York, No. 04-
4339pr, slip op. at 1 (2d Cir. Sept. 13, 2004) (No. 00-CV-0767, Dkt. No. 37).

In his fourth ground, petitioner asserts several theories in support of his claim that the prosecutor engaged in misconduct in the criminal matter below.  See Am. Pet., Ground Four. Specifically, Johnson argues that the District Attorney:  i) engaged in misconduct during the course of his summation; ii) knowingly violated the doctrine of collateral estoppel by re-trying Johnson on the charge contained in the Fifth Count of the Indictment; iii) knowingly solicited perjurious testimony; and iv) "manipulated the grand jury to violate the statutory mandates."  Id.

Respondent asserts that Johnson has failed to exhaust the first and third theories he has raised in support of this ground, and that Johnson procedurally defaulted on the remaining theories he alleges in support of this claim.  See Resp. Mem. at 9-10.

Johnson raised his claim in which he alleged that the prosecutor engaged in misconduct in his summation in petitioner's coram nobis application.  See Coram Nobis Application at (unnumbered) 8.  In New York, a coram nobis application is only properly utilized to assert a claim alleging ineffective assistance of appellate counsel.  See DeVivo v. Superintendent, Auburn Correctional Facility, No. 02-CV-0840, 2006 WL 581145, at *9 n.13 (N.D.N.Y. Mar. 8, 2006) (Mordue, C.J.) (citing People v. Bachert, 69 N.Y.2d 593, 595-96 (1987)).  Therefore, at first blush, respondent's claim that Johnson did not exhaust this claim would appear to have merit.  However, in Aparicio v. Artuz, 269 F.3d 78 (2d Cir. 2001), the Second Circuit was similarly confronted with a claim that one of petitioner's two federal habeas claims was unexhausted because it had only been improperly raised in the context of a coram nobis petition. Id., 269 F.3d at 89.  The Second Circuit noted that although the Appellate Division did not specifically address that improperly raised argument, such claim was necessarily adjudicated by that court when it denied petitioner's coram nobis application.  Id., 269 F.3d at 92.  The Aparicio court therefore found the claim to have been exhausted, notwithstanding the fact that it was

asserted in a <u>coram</u> <u>nobis</u> application.  <u>Id.</u>  In light of <u>Aparicio</u>, this Court finds that Johnson has exhausted his initial theory alleging prosecutorial misconduct.[14]

However, nowhere in Johnson's <u>coram</u> <u>nobis</u> application did he argue the third theory he asserts in support of this ground, i.e., that the prosecutor suborned perjurious testimony from a prosecution witness.  Nor does it appear to this Court that such claim was ever raised by Johnson in any of his state court challenges to his conviction.  Furthermore, petitioner has not referred this Court to any state-court challenge in which he raised this issue.[15]

It is well settled that a federal district court "'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State ....'"  <u>Shabazz v. Artuz</u>, 336 F.3d 154,160 (2d Cir. 2003)) (quoting <u>Aparicio</u>, 269 F.3d at 89) (other citation omitted); <u>see also</u> <u>Ellman v. Davis</u>, 42 F.3d 144, 147 (2d Cir. 1994).  This is because "[s]tate courts, like federal courts, are obliged to enforce federal law."  <u>Galdamez v. Keane</u>, 394 F.3d 68, 72 (2d Cir.) (quoting <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844 (1999)),

---

[14]      Johnson could not have properly sought leave to appeal the Fourth Department's decision from the Court of Appeals.  In this regard, the undersigned notes that the Appellate Division denied Johnson's <u>coram</u> <u>nobis</u> application on June 16, 2000.  <u>See</u> <u>Johnson</u>, 273 A.D.2d at 950.  Parties have only been afforded an opportunity to seek leave to appeal the denial of <u>coram</u> <u>nobis</u> applications from the Court of Appeals since November 1, 2002.  <u>See</u> <u>Brooks v. Donnelly</u>, No. 02-CV-5883, 2003 WL 23199559, at *1 (E.D.N.Y. Dec. 8, 2003); <u>see also</u> 2002 N.Y. Laws ch. 498, § 1.

[15]      Habeas corpus petitioners bear the burden of demonstrating that they have exhausted available state remedies.  <u>Cruz v. Artuz</u>, 97-CV-2508, 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002) (citing <u>Colon v. Johnson</u>, 19 F.Supp.2d 112, 119-20 (S.D.N.Y. 1998); <u>United States ex rel. Cuomo v. Fay</u>, 257 F.2d 438, 442 (2d Cir. 1958)); <u>see also</u> <u>Ruine v. Walsh</u>, 00 CIV. 3798, 2002 WL 1349713, at *2 (S.D.N.Y. June 19, 2002) (citing <u>Colon</u>).

cert denied sub nom., Galdamez v. Fischer, 544 U.S. 1025 (2005).[16]  Since petitioner does not

appear to have ever presented his claim that the prosecutor engaged in misconduct by suborning

perjurious testimony in the state courts, this Court agrees with the respondent that such claim is

unexhausted.

Furthermore, Johnson cannot now pursue this claim through a second appeal to the

Fourth Department because a defendant is "entitled to one (and only one) appeal to the Appellate

Division."  See Aparicio, 269 F.3d at 91 (citations omitted).  Moreover, Johnson could not now

properly raise his perjury claim in a fourth CPL motion filed with the County Court because this

theory could have been asserted by Johnson in either his direct appeal or one of his prior CPL

motions.[17]  See Aparicio, 269 F.3d at 91 ("New York does not otherwise permit collateral attacks

on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal")

(citing CPL § 440.10(2)(c)).  Therefore, Johnson's claim that the prosecutor suborned perjurious

testimony is "deemed exhausted" for purposes of the present habeas application.  St. Helen v.

Senkowski, 374 F.3d 181, 183-84 (2d Cir. 2004); Spence v. Superintendent, Great Meadow

Correctional Facility, 219 F.3d 162, 170 (2d Cir. 2000).  Although such claim is "deemed

exhausted," it is also procedurally defaulted.  See St. Helen, 374 F.3d at 183-84; Aparicio, 269

F.3d 90 (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)); see also Spence, 219

---

[16]    This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  O'Sullivan 526 U.S. at 845; see also Galdamez, 394 F.3d at 72 (citing O'Sullivan).

[17]    In support of his claim that the prosecutor elicited perjurious testimony, Johnson refers this Court to matters contained in the record, including the grand jury and trial testimony of various witnesses, as well as statements made by individuals to law enforcement agents prior to his trial.  See Supporting Mem. at 10-13.

F.3d at 170; <u>Gary v. Conway</u>,  No. 06-CV-248,  2007 WL 2071744, at *3 (N.D.N.Y. July 17, 2007) (Hurd, J., adopting Report-Recommendation of Magistrate Judge Homer), <u>appeal dismissed</u>, <u>Gary v. Conway</u>, No. 07-3583-pr (2d Cir. Oct. 12, 2007).

Turning to the second and fourth aspects of petitioner's prosecutorial misconduct claim, the Court notes that Johnson raised these theories in his June, 2001 CPL Motion.  <u>See</u> Dkt. No. 31, Exh.17 at 12-31.  Judge Aloi denied that application pursuant to CPL § 440.10(3)(b).  <u>See</u> September, 2001 Order at 5.

A state court's denial of a claim pursuant to CPL § 440.10(3)(b) is a procedural denial of a claim.  <u>E.g.</u>, <u>Murden v. Artuz</u>, 497 F.3d at 189 (noting that state court, in denying claim pursuant to CPL §§ 440.10(3)(b) and (c), had "found that the entire [CPL] motion was procedurally barred"); <u>see also</u> <u>Huggins v. Girdich</u>, No. 03-CV-3248, 2007 WL 433397, at *5 (E.D.N.Y. Feb. 7, 2007); <u>Dure v. Kelly</u>, No. CV-90-4303, 1992 WL 394173, at *2 (E.D.N.Y. Dec. 10, 1992); <u>but</u> <u>see</u> <u>Garner v. Superintendent of Upstate Correctional Facility</u>, No. 01-CV-0501, 2007 WL 2846907, at *20 (N.D.N.Y. Sept. 26, 2007) (Kahn, J., adopting Report-Recommendation of Magistrate Judge David E. Peebles) (noting that a state court's reliance on CPL § 440.10(3)(b) "may result in a procedural bar to habeas review" but nevertheless affording the claim <u>de</u> <u>novo</u> review).

Thus, Johnson is procedurally barred from asserting the second, third and fourth theories he raises in support of his fourth ground for relief.

### 3.    <u>Ground Five</u>

In his fifth ground, petitioner asserts that the prosecutor violated the doctrine of collateral estoppel by prosecuting Johnson for a second time with respect to the charge contained in the fifth count in the Indictment.  <u>See</u> Am. Pet., Ground Five.

27

Johnson asserted this claim in the state court in his March, 1999 CPL Motion.  See Dkt. No. 31, Exh. 7.  Judge Burke denied that collateral challenge to Johnson's conviction pursuant to CPL § 440.10(2)(b).  See April, 1999 Order at 2.

"New York Criminal Procedure Law § 440.10(2)(b) has been recognized as an 'independent and adequate' State procedural ground by courts in this Circuit."  Brown v. New York State, 374 F.Supp.2d 314, 318-19 (W.D.N.Y. 2005); see also Curry v. Bennett, 02-CV-3655, 2003 WL 22956980, at *15 (E.D.N.Y. Oct. 17, 2003) (holding that a claim which is "procedurally barred pursuant to [CPL § ] 440.10(2)(b) [is one based] ... on New York procedural law rather than federal law") (citation omitted); Hernandez v. Filion, No. 03 CIV. 6989, 2004 WL 286107, at *8 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.), adopted, 2004 WL 555722 (S.D.N.Y. Mar. 19, 2004); Bell v. Poole, 00CV5214, 2003 WL 21244625, at *8 n.4 (E.D.N.Y. Apr. 10, 2003) (denial of claim under CPL § 440.10(2)(b) is a "procedural bar" to federal review of claim); Powell v. Miller, 98-CV-6286, 2001 WL 1708815, at *9 (W.D.N.Y. Nov. 5, 2001) (same).  This Court therefore agrees with respondent that Johnson is procedurally barred from asserting the fifth ground for relief contained in his amended petition.

In sum, this Court finds that Johnson has procedurally defaulted on his first, second, third and fifth grounds for relief, as well as all portions of his fourth ground except the aspect of that ground which argues that the prosecutor engaged in misconduct during the course of his summation.  The undersigned therefore next considers whether this Court may nevertheless address the substance of these claims.

###    iii.    Consideration of Procedurally Barred Claims

Federal courts may not review the substance of procedurally forfeited claims unless the petitioner demonstrates both good cause for the procedural default and actual prejudice resulting

28

from the alleged violation of federal law.  Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005);

Fama, 235 F.3d at 809; Livingston v. Herbert, No. 00-CV-1698, 2002 WL 59383, at *2

(N.D.N.Y. Jan. 3, 2002) (Homer, M.J.), adopted, No. 00-CV-1698 (Dkt. No. 20) (N.D.N.Y. Jan.

24, 2002) (Kahn, J.), appeal dismissed, No. 02-2083, slip op. at 1 (2d Cir. Aug. 28, 2002)

(unpublished).

　　　　To establish cause in this context, a petitioner must show that "'some objective external

factor impeded his ability to comply'" with the rule that resulted in the procedural bar.  Pinero v.

Greiner, No. 01 CIV. 9991, 2007 WL 2712496, at *21 (S.D.N.Y. Sept 17, 2007) (quoting

Restrepo v. Kelly, 178 F.3d 634, 638-39 (2d Cir. 1999)); see also Wilson, 2003 WL 22765351,

at *3 (citing Coleman, 501 U.S. at 753).  Examples of such "external factors" include

"interference by officials," the ineffective assistance of counsel, or proof that "the factual or

legal basis for a claim was not reasonably available" at the time of petitioner's trial, direct appeal

or any previously filed CPL motion.  E.g., Wilson, 2003 WL 22765351, at *3 (citing Murray v.

Carrier, 477 U.S. 478, 488 (1986)); see, e.g., Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994)

(citing Murray); United States v. Helmsley, 985 F.2d 1202, 1206 (2d Cir. 1993).

　　　　In his traverse, Johnson acknowledges respondent's argument that petitioner has

procedurally defaulted on several of his claims.  See Traverse at 5.  He does not, however,

attempt to establish legal cause for his default.  Rather, he merely asserts that this Court may

overlook his procedural default because of the "seriousness of the Constitutional violations"

alleged in his amended pleading, as well as the "statutory violations" that purportedly occurred

in the state court proceedings below.  Traverse at 5-6.  In support of this relatively novel

proposition, Johnson cites the Supreme Court's decision in Sumner v. Mata, 449 U.S. 539

(1981).  Unfortunately for Johnson, Sumner did not address, in any way, the doctrine of

29

procedural default and the related issues of when a federal district court may properly review

procedurally defaulted claims.  See id.  Moreover, in a Supreme Court case decided more than

twenty years after the Sumner case on which petitioner now relies, the Supreme Court reaffirmed

the fact that federal habeas review of procedurally forfeited claims is quite limited.  Specifically,

in Dretke v. Haley, 541 U.S. 386 (2004), that Court noted that:

> Out of respect for finality, comity, and the orderly administration
> of justice, a federal court will not entertain a procedurally
> defaulted constitutional claim in a petition for habeas corpus
> absent a showing of cause and prejudice to excuse the default.  We
> have recognized a narrow exception to the general rule when the
> habeas applicant can demonstrate that the alleged constitutional
> error has resulted in the conviction of one who is actually innocent
> of the underlying offense or, in the capital sentencing context, of
> the aggravating circumstances rendering the inmate eligible for the
> death penalty.

Dretke, 541 U.S. at 388 (citations omitted).

Nothing filed by Johnson herein suggests that he has established legal cause for the

procedural defaults noted above.[18]  Furthermore, since Johnson has not established cause for his

procedural defaults, this Court need not decide whether he suffered any prejudice, because

federal habeas relief is unavailable under this limited exception permitting review of

procedurally barred claims unless **both** cause and prejudice is demonstrated by the petitioner.[19]

Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985) (emphasis added); D'Alessandro v. Fischer,

---

[18]    As is discussed more fully above, Johnson's ineffective assistance claim
relating to appellate counsel is without merit.  Therefore, appellate counsel's allegedly
deficient performance cannot establish "cause" in this action excusing Johnson's procedural
default.  Thomas v. Hollins, No. 02-CV-0816, 2007 WL 189088, at *11 (N.D.N.Y. Jan. 22,
2007) (Kahn, J.).

[19]    The petitioner bears the burden of demonstrating legal cause for his
procedural default and resulting prejudice.  See Simpson v. Portuondo,  01CIV.8744, 2002
WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

No. 01 CIV. 2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing Stepney); Moore v. Greiner, No. 02 CIV.6122, 2005 WL 2665667, at *12 (S.D.N.Y. Oct. 19, 2005) (citing Stepney); Lutes v. Ricks, No. 02-CV-1043, 2005 WL 2180467, at *9 (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.) (citing Stepney and Jones v. Barkley, No. 9:99-CV-1344, 2004 WL 437468, at *9 (N.D.N.Y. Feb. 27, 2004) (Sharpe, J.) (collecting cases)); Pou v. Keane, 977 F.Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.).

Even when a petitioner has failed to establish cause for his default, a federal court may nevertheless consider the substance of procedurally barred claims where the petitioner demonstrates that a fundamental miscarriage of justice would occur absent federal review of the claims.[20] Dixon, 293 F.3d at 80; Morales v. Greiner, No. CV-98-6284, 2005 WL 1009545, at *8 (E.D.N.Y. May 2, 2005).  The Supreme Court has noted, however, that cases that fall within this final exception to the procedural default rule are "extremely rare" because the exception may only be applied in "extraordinary cases."  Schlup v. Delo, 513 U.S. 298, 321-22 (1995); accord Sweet v. Bennett, 353 F.3d 135, 142 (2d Cir. 2003).

To establish "actual innocence" in this context, Johnson must establish that, in light of all of the evidence available, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  Schlup, 513 U.S. at 327-28.

This Court has reviewed the records supplied by the parties herein in conjunction with this matter in order to ascertain whether Johnson may properly seek safe harbor from the

---

[20]     A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002).

procedural denial of the above-cited claims based upon a claim of actual innocence. Unfortunately for Johnson, he has not convinced this Court that he is actually innocent of any of the crimes of which he stands convicted.  To the contrary, the evidence adduced at trial discussed more fully above amply supports the jury's guilty verdict.  Thus, this final exception that permits federal courts to review procedurally barred claims is unavailable to him.

Based upon the foregoing, this Court denies, as procedurally forfeited, the claims Johnson raises in his first, second, third and fifth grounds for relief, as well as the portions of his fourth ground which allege the prosecutor engaged in misconduct by:  i) prosecuting Johnson on criminal charges which the district attorney was collaterally estopped from pursing; ii) suborning perjurious testimony; and iii) "manipulat[ing] the grand jury to violate the statutory mandates."

**C.  <u>Remaining Claims</u>**

**1.  <u>Prosecutorial Misconduct</u>**

In addition to the theories alleging prosecutorial misconduct which this Court has found to be procedurally barred, as noted <u>ante</u>, Johnson also claims that the prosecutor improperly bolstered the testimony of a key prosecution witness while delivering his summation.  <u>See</u> Am. Pet., Ground Four.

**i.  <u>Clearly Established Supreme Court Precedent</u>**

A criminal defendant's right to a fair trial is mandated by the due process clause of the United States Constitution.  <u>Albright v. Oliver</u>, 510 U.S. 266, 273 n.6 (1994) (citing <u>United States v. Agurs</u>, 427 U.S. 97, 1007 (1976)).[21]  For habeas relief to be granted based upon a claim

_____

[21]   "A right to a fair trial is a right ... protected by the due process clause of the Fourteenth Amendment."  <u>Adamson v. People of State of California</u>, 332 U.S. 46, 53 (1947) (footnote omitted).

of prosecutorial misconduct, however, the alleged misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). In addressing the merits of such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982).

In light of the AEDPA, this Court must ascertain whether the Appellate Division's decision which denied Johnson's claim alleging improper bolstering on the part of the prosecution, see Johnson, 273 A.D.2d at 950, is either contrary to, or represents an unreasonable application of, the foregoing Supreme Court precedent.

### ii.   Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent

For a petitioner to be entitled to habeas intervention based upon a claim that the prosecutor engaged in misconduct during the course of his closing argument, the petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'" Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998) (quoting Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994)); see also Foster v. Miller, No. 04CIV7990, 2007 WL 1893726 (S.D.N.Y. June 29, 2007) (citing Bentley). Relevant factors to be considered in arriving at this determination include the severity of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of defendant's conviction absent the prosecutor's objectionable remarks. Bentley, 41 F.3d at 824; Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990); Brown v. Phillips, No. CV-03-0361, 2006 WL 656973, at *7 (E.D.N.Y. Mar. 13, 2006) (citing Tankleff); Palmer v. Senkowski, No. 99 CIV. 9634, 2002 WL 54608, at *4 (S.D.N.Y. Jan

33

15, 2002); see also Darden, 477 U.S. at 181-83; Donnelly, 416 U.S. at 644-47.

As noted above in discussing petitioner's claim that his appellate counsel rendered ineffective assistance, Johnson claims that the prosecutor improperly bolstered the testimony of a witness when the prosecutor referred to the fact that Johnson was married to the niece of prosecution witness Williams. See Supporting Mem. at 9; see also Coram Nobis Application at ¶ 4. However, as has been noted previously, since Johnson's defense counsel suggested to the jury that Williams' testimony was not credible, e.g., Trial Tr. at 833, and the evidence established that Johnson was married to Williams' niece, Trial Tr. at 502, the prosecutor's comments regarding Williams' familial relationship to Johnson was a measured response to defense counsel's closing argument, and not prosecutorial misconduct. E.g. Walker v. Bennett, 262 F.Supp.2d 25, 40 (W.D.N.Y. 2003); Grace v. Artuz, 258 F.Supp.2d 162, 176 (E.D.N.Y. 2003); King v. Greiner, 210 F.Supp.2d 177, 180 (E.D.N.Y. 2002). Since the prosecutor did not engage in misconduct in delivering his summation, the Fourth Department's decision denying petitioner's claim asserting this theory, see Johnson, 273 A.D.2d at 950, is neither contrary to, nor represents an unreasonable application of, the above-cited Supreme Court precedent. Thus, the remaining aspect of petitioner's fourth ground for relief is denied on the merits.

### 2.    Illegal Sentence

In his seventh and final ground for relief, Johnson argues that he was illegally sentenced by the County Court. See Am. Pet., Ground Seven. In support of this claim, petitioner principally claims that the consecutive sentence imposed on him arising out of his conviction on the fifth count in the indictment is illegal because he was wrongfully prosecuted on that charge. See Supporting Mem. at 23-24.

Johnson challenges the validity of his conviction on the fifth count in the Indictment in

34

both his fourth and fifth grounds for relief.  See Am. Pet., Grounds Four, Five.  However, as is discussed more fully above,  Johnson is not entitled to federal habeas relief on either of these claims.  A fortiori, any claim that the sentence imposed on him is illegal because his conviction on the fifth count of the indictment is improper is necessarily without substance.

Johnson additionally contests the legality of the consecutive nature of the sentence by arguing that the trial court "abused its discretion in sentencing defendant to a consecutive sentence ... when the weapons possession charge[] ...was a continuing offense according to law." Am. Pet., Ground Seven.

This claim, however, fail to acknowledge the established authority which holds that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing Underwood v. Kelly, 692 F.Supp. 146 (E.D.N.Y. 1988), aff'd mem., 875 F.2d 857 (2d Cir. 1989)); see also Brown v. Donnelly, 371 F.Supp.2d 332, 343-44 (W.D.N.Y. 2005); Jackson v. Lacy, 74 F.Supp.2d 173, 181 (N.D.N.Y. 1999) (McAvoy, C.J.) ("[i]t is well-settled ... that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law").  Since the maximum sentence permitted by New York law on a conviction for criminal possession of a weapon in the third degree is an indeterminate term of imprisonment of three and one-half to seven years, see People v. Rickett, 259 A.D.2d 636, 637 (2d Dept. 1999), aff'd, 94 N.Y.2d 929 (2000); see also Brown v. Greiner, 409 F.3d 523, 527 (2d Cir. 2005), the length of the sentence imposed on Johnson by the County Court for that conviction was clearly within the range prescribed by state law.

Finally, petitioner's claim that the consecutive nature of the sentence imposed on him for that conviction rendered his sentence illegal, see Am. Pet., Ground Seven, is without merit.  In

35

New York, the discretionary power of trial courts in New York "includes the ability to impose consecutive penalties for multiple crimes." People v. Ramirez, 89 N.Y.2d 444, 450 (1996) (citing Matter of Walker v. Walker, 86 N.Y.2d 624, 629 (1995)) (other citation omitted). Consecutive sentences may be imposed on a defendant "when the offenses are committed through separate and distinct acts, though they are part of a single transaction," even where the statutory elements of the offenses overlap.  See Ramirez, 89 N.Y.2d at 451.  Concurrent sentences are only **required** in New York where two or more offenses are committed:  "(1) 'through a single act or omission,' or (2) 'through an act or omission which in itself constituted one of the offenses and also was a material element of the other.'"  Bethune v. Superintendent, Bare Hill Correctional Facility, 299 F.Supp.2d 162, 166 (W.D.N.Y. 2004) (emphasis added) (citing New York Penal Law § 70.25(2)); see also People v. Laureano, 87 N.Y.2d 640, 643 (1996).

In the subject criminal case, Counts One through Four of the Indictment relate to criminal conduct that was alleged to have occurred on May 25, 1997, see Indictment, while the weapons possession charge in Count Five related to Johnson's claimed conduct on May 31 1997.  Id. Since the criminal conduct alleged in the final count in the Indictment did not arise out of the other charges in the Indictment, and the allegations contained therein were not material elements of the other four charges brought against him, the County Court was not required to impose a concurrent sentence on Johnson on his conviction of the fifth count.[22]  See Ledesma v. Cunningham, No. 03 CIV.6322, 2004 WL 1775677, at *23 (S.D.N.Y. Aug 10, 2004) ("New

---

[22]     Johnson himself candidly admits that the charge alleged in Count Five of the Indictment "stems from a separate incident occurring on May 31, 1997 which was completely separate...."  Supporting Mem. at 24 (emphasis in original).

York law also allows for consecutive sentences for distinct crimes committed on separate dates"), adopted Ledesma v. Cunningham, No. 03 CIV.6322, 2004 WL 2319326 (S.D.N.Y. Oct. 14, 2004); see, e.g., People v. Clymer, 26 A.D.3d 443, 443 (2d Dept. 2006) ("the consecutive sentences did not violate Penal Law § 70.25(3) since the defendant's acts [occurred] on two separate dates and at two separate locations [and] did not encompass the same incident or transaction").

## III.   Certificate of Appealability

Finally, the Court notes that 28 U.S.C. § 2253(c) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court ....[23]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2).  Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED**, that Johnson's amended habeas petition (Dkt. No. 17) is **DENIED** and

---

[23]   Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  See Fed.R.App.P. 22(b).

**DISMISSED**, and it is further

ORDERED, that the Clerk of Court serve a copy of this Memorandum-Decision and

Order upon the parties to this action by regular or electronic mail, and it is further

ORDERED, that any state court records that were not filed and docketed in this action

be returned directly to the Attorney General at the conclusion of these proceedings (including

any appeal of this Memorandum-Decision and Order filed by any party).

**IT IS SO ORDERED.**

Dated:          October 29, 2007
                Syracuse, New York

_____
Neal P. McCurn
Senior  U.S. District Judge